# Hays, Indorsee, etc., *versus* Lycoming Fire Insurance Company.

1. Where a mutual fire- insurance company is authorized by statute to issue policies of insurance on the cash principle to others than members of the company, all persons who are insured upon that principle are entitled to look to the premium notes of the members as representing the capital stock of the company.

2. Wherever, therefore, a person so insured has suffered a loss under his policy, and the company, in order to meet that loss, *inter alia*, makes an assessment upon the premium notes of its members, the insured, upon failing to receive the amount due him, may, after reducing his claim to judgment, and provided that the company still remains solvent, issue an attachment execution against the amount of unpaid assessments still in the hands of the members of the company, and against the amount of assessments collected by an agent of the company, but not paid over by him.

3. *Semble,* that probably a mandamus would not be granted at the suit of the creditor of a corporation against the officers thereof, to compel them to collect the notes, stock, subscriptions and other assets due it in order to meet his demand; and even if a member of the company should be entitled to a writ of this kind, a stranger certainly would not.

May 30th 1881. Before SHARSWOOD, C. J., GORDON, TRUNKEY and STERRETT, JJ. MERCUR, PAXSON and GREEN, JJ., absent.

ERROR to the Court of Common Pleas of *Lycoming county:* Of May Term 1881, No. 40.

Attachment execution, by William H. Hays, indorsee of the Eighth Avenue Railroad Company, against The Lycoming Fire Insurance Company, defendant, and S. N. Williams and others, garnishees.

The judgment under which this attachment execution issued was obtained by the said plaintiff against the said defendant in

[Hays *v.* Lycoming Fire Insurance Co.]

an action of assumpsit on an order drawn by the president of the defendant corporation, by order of the board of directors, on the treasurer of the company, dated June 9th 1880, for $3505.74, to the order of the Eighth Avenue Railroad Company, payable September 9th 1880, accepted in writing by said treasurer, and indorsed by the payee to the order of the plaintiff Hays, and by him indorsed. The order was protested for nonpayment at maturity. This order had been given for the amount of adjusted loss found due by the defendant to the Eighth Avenue Railroad Company, for the destruction by fire of certain premises, insured by the company defendant under a policy issued on the " all cash plan."

To the attachment execution the defendant filed a special plea that " under its charter and the supplements thereto and by reason of the facts and legal conclusions connected therewith, specifically set out in the affidavit of William A. Krouse, assistant secretary, and filed herewith, the company is not subject to the writ of execution attachment."

The affidavit of Krouse, referred to in the plea, was as follows :

" 1. That said corporation is a mutual insurance company, incorporated by act of Assembly approved March 20, 1840, and that said charter has been altered and amended by several subsequent acts of the General Assembly of the State of Pennsylvania, viz. : An act approved July 26, 1842 ; also, an act approved May 29, 1854 ; also, an act approved May 1, 1861.

" 2. That prior to the passage of the act of May 1, 1861, said company had no authority to issue policies or effect insurances on the cash or stock plan, but by the terms of said supplement it was authorized " to make insurances on property of every class or description already included in this act of incorporation, according to their discretion, for which cash premiums only shall be received," &c.

" 3. That the order of acceptance on which the original suit is brought and judgment obtained, was issued by said company or its officers in settlement of a claim for loss by fire of the Eighth Avenue Railroad Company under a policy held by them, which policy was issued on the cash plan in pursuance of the supplement of May 1, 1861, and that the face of said order or acceptance indicates that it was given in settlement of a claim for loss by fire.

" 4. That said company have no authority, under its charter or the several supplements thereto, to execute negotiable paper of any kind in payment of any loss or for any purpose whatever ; but orders or acceptances have been issued for losses and expenses for the convenience of the insured and the company

upon the ascertaining of the amount the company is liable to pay in case of loss or losses by fire.

" 5. That section of nine of the charter of the company provides as follows : ' The directors shall, after receiving notice of any loss or damage by fire sustained on property insured by said corporation, and ascertaining the same, or after the rendition of any judgment as aforesaid against said company for loss or damage, settle and determine the sums to be paid by the several members thereof as their respective proportion of such loss, &c.'

" 6. That in accordance with the terms of the charter the directors of said company, on the 28th day of May, A. D. 1880, levied an assessment on all notes in force on the 15th day of April, 1880, intending to provide for the payment of all losses and expenses up to that date ; and the claim on which the original suit was brought in this case was included in said assessment.

" 7. That on the same day, viz. : May 28th 1880, the directors of said company levied another assesment on all notes in force on the 14th day of May, A. D. 1880, to pay losses and expenses between April 15th and May 14th 1880, inclusive, the losses between said last mentioned dates having been very large the aggregate losses in the Milton fire alone being about $100,000.

" 8. That said assessments have been placed in the hands of receivers or collectors, and collections have been made thereon as fast as possible, and applied to the payment of the liabilities of the company, but owing to the large amount of liabilities it has been found impossible to pay them off as they come due, consequently the company have paid to those entitled to receive the same a proportionate part of their claims from time to time, and have paid up to this time thirty per cent., and have distributed that amount on the claim of the plaintiff, which he has refused to receive under the plan of distribution adopted by the company.

" 9. Said deponent is informed by counsel learned in the law that claims against said company cannot be enforced by execution attachment for the following reasons : Because the corporation under its charter is not subject to the writ. Because mutual members of said company cannot be made garnishees or have assessments on their notes, levied to pay particular losses, attached. Because when an assessment is made by a mutual company to pay losses up to the date of the assessment, persons or corporations whose claims or losses are included in said assessment have a vested interest therein, and prior assessments cannot be attached to pay subsequent losses, nor

[Hays v. Lycoming Fire Insurance Co.]

can subsequent assessments, made for the purpose of paying
subsequent losses, be attached. Because moneys in the hands of
receivers or collectors are virtually in the hands of the com-
pany itself. Because the proceeds of any assessment virtually
belong to those creditors of the company for whose benefit said
assessment was levied according to the terms of the charter.
Because a special method is set forth in the charter of the com-
pany for the payment of losses, and creditors of the company
cannot collect their claims *by execution attachment.*"

The garnishees made no defense, but in response to interro-
gatories certain of them answered that as members of the com-
pany defendant, insured therein on the mutual plan, they had
given premium notes on which certain assessments had been
levied which remained unpaid, due and owing by them to the de-
fendant company. H. W. Watson, one of the garnishees, an-
swered that as agent of the company, appointed to collect assess-
ments levied on the premium notes of members, he held certain
funds. The total liability acknowledged by the garnishees was
$1435.87. It was admitted that the assets of the company, con-
sisting largely of premium notes, were more than sufficient to
pay its debts due for losses by fire.

The parties having agreed to dispense with a jury trial, the
case was tried before CUMMIN, P. J., whose opinion, after stating
the facts, was as follows:

"The only question for solution in this case is, whether or
not unpaid assessments due on the premium notes of policy-
holders and members of the Lycoming Fire Insurance Company
are liable to execution attachment on a judgment recovered on a
claim against the company for a loss by fire covered by a cash
policy.

"The charter gives no preference to cash policies in payment
of losses, and provides no different method of paying them than
that prescribed for all its policies. That the cash policies and
premium note policies stand on the same basis is no longer an
open question in this state: Hummel's Appeal, 28 P. F. S.
320 ; Schimpf & Son v. Lehigh Valley Mutual Insurance Com-
pany, 5 Norris 373.

"I am of opinion that the plea of the defendant in this case
is good. First, because the debt sought to be attached is not
such a debt due to the defendant as is contemplated by the Act
of Assembly authorizing the writ of execution attachment to is-
sue. The charter of the Lycoming Fire Insurance Company is
a part of every contract of insurance it enters into. By its char-
ter this company cannot levy and collect assessments from its
members for the purpose of increasing its cash balance, nor for
any other purpose than that therein prescribed, viz.: to pay

[Hays *v.* Lycoming Fire Insurance Co.]

losses and incidental expenses. The company, as a corporation, cannot do as they please with the fruits of such assessments; they are mere trustees, whose duties it is to ascertain from time to time the amounts of money to be raised, to ratably assess the same on its members, and, when collected, appropriate the money to the persons and purposes for which it was raised. They can only make such assessments for certain purposes, and, when collected, they cannot use the money for any other purpose. The assessments due from these garnishees are, therefore, not due to the defendant in its own right, although collectible in its name, but belong to those policy-holders who have suffered the losses for which it was laid. As has been said by our Supreme Court, they have an immediate vested interest in them : Rhinehart *v.* Allegheny County Mutual Insurance Company, 1 Barr 359 ; Coston *v.* Same, Id. 322.

" But another reason why this writ will not lie in this case is, because a remedy for the payment of this debt is provided by the charter of the company and it must be pursued. The charter provides that debts of this kind shall be paid by assessments to be levied on the premium notes of those persons who are members of the company at the time of the happening of such loss. In all cases where a remedy is provided or duty enjoined or anything directed to be done by any act or acts of Assembly of this Commonwealth the said act shall be strictly pursued," &c. : Act of March 21st 1806, Purdon's Digest, p. 58, pl. 5. That such remedy is exclusive is held in Koch *v.* Williamsport Water Company, 15 P. F. S. 288, and many other cases.

" If this company should neglect or refuse to make and collect assessments to meet its losses, it could be compelled by mandamus to do its duty in this regard. If it should attempt to use such funds when collected for any other than the purposes for which they were raised, it could be enjoined from so doing at the suit of any one interested. Thus we find the remedy provided is ample; and that it is appropriate and should be strictly pursued becomes apparent when we consider the rights of all the parties in the premises. In the People's Fire Insurance Company *v.* Hartshorne & Co., 9 Norris 470, Mr. Justice STERRETT, in delivering the opinion of the court, says : " The essential principle on which mutual insurance companies are organized, is that each member will pay his proportionate share of expenses incurred and losses which happen during the period of his membership." From this it follows that members of such companies are not liable for losses which occurred before they became members, nor after they ceased to be such. They ought not to be compelled by any process of law to pay any portion of a loss for which they are not liable as a member.

[Hays v. Lycoming Fire Insurance Co.]

"If an execution attachment be issued as in this case, members may be compelled to pay for losses which otherwise they ought not to pay. If these assessments can be appropriated to the payment of the debt of any one who may attach them, they may be so reduced that they will not pay the debts for which they were assessed. These assessments are laid for a sufficient sum to pay the debts for which certain members are liable; if they are diverted to the payment of other debts for which those members are not liable, how is this deficiency to be made up? What authority of law is there to compel these members to pay more than their proportionate share of losses and expenses incurred during their membership?

"Unless the remedy provided by the charter is pursued in the payment of such debts as the one now before us, some members of the company will be compelled to pay claims they ought not to pay, whilst others will be released from the payment of such as they should pay.

"What I have said as to those garnishees who are members of the company, applies with equal force to the garnishee Henry W. Watson, Esq.; and besides, as to him it may well be said that the funds in his hands are in the hands of the company. If these assessments are not subject to the writ of execution attachment in this case for either of the reasons assigned, it is of no importance that one of them was laid to cover losses including the one on which the plaintiff's judgment is founded.

"I am of opinion that the plea of the defendant is sustained by the law and facts in this case, and it is now ordered that judgment be entered thereon in favor of the defendant."

The plaintiff took this writ of error, assigning for error the sustaining of the defendant's plea, and the entering of judgment thereon in favor of the defendant.

*C. La Rue Munson* (with him *Addison Candor* and *Samuel Wagner*), for the plaintiff in error.—The act of June 16th 1836, Pamph. L. 767, provides that "debts due to defendant . . . . may be attached and levied in satisfaction of the judgment." The unpaid assessments levied on premium notes given by the garnishees to the defendant were debts. The premium notes of a mutual insurance company constitute its capital stock, and assessments levied thereon are the same as unpaid subscriptions to capital stock, which are attachable as are other debts: Rhinehart v. Allegheny Co. Mut. Ins. Co., 1 Barr 359; Osgood v. Strauss 65 Barb. (N. Y.) 383; Paterson v. Sinclair, 2 Norris 250; King v. Elliott, 13 Miss. 428.

The loss in this case was upon a cash policy, under which, by the terms of the amended charter, the insured did not be-

come a member of the company, and he was not therefore
bound to pursue the remedy prescribed in the original charter
to be followed by members of the company insured on the mu-
tual plan.   There was no appropriation of the assessments to
particular losses ; neither the creditor members nor the garnish-
ees had been notified of any such appropriation, and even if
intended to have been made by the company, they cannot set
it up against a judgment creditor under a cash policy.   The
court below confused the position of the plaintiff with that of a
member of a mutual company who also holds a cash policy,
as was the case in Schimpf *v.* Lehigh Valley Ins. Co., 5 Norris
377.   But the distinction was clearly recognized in that case.
The funds in the hands of the agent, Watson, were attachable,
in the same manner as money of a client in the hands of an at-
torney, or held by an assignee for benefit of creditors under a
void assignment, or in the hands of a messenger : Riley *v.* Hirst,
2 Barr 346 ; Stewart *v.* McMinn, 5 W. & S. 100 ; Driesbach *v.*
Becker, 10 Cas. 152 ; Silverwood *v.* Bellas, 8 Watts 420 ; Reed
*v.* Penrose, 12 Casey 214.   The case is not like that of Foweer
*v.* R. R. Co., 11 Casey 22, where it was held that the proceeds
of railroad tickets in the hands of the ticket agent are in the
possession of the company itself, and therefore not attachable.
In State Fire & Marine Ins. Co. *v.* Oglesby, 1 Pearson's De-
cisions, 152, Judge PEARSON held that funds in the hands of the
agent of an insurance company were attachable.

*Henry  W.  Watson* (*Henry Johnson* with him), for the de-
fendant in error.—The judgment was obtained on a negotiable
instrument which the corporation defendant had no power, un-
der their charter to issue.   The indorsee took with notice, and
the judgment will not support an attachment execution.   But
the assessments attached are not " debts due the defendant "
within the meaning of the Act.   They were levied for the pur-
pose of paying particular prior losses, and were appropriated
thereto.   They belong not to the company but to those policy-
holders who suffered the losses for which the assessments were
laid : Watson *v.* Bagaley, 2 Jones 167 ; United States *v.*
Vaughan, 3 Binn. 400 ; Sharpless *v.* Welsh, 4 Dallas 279.   A
creditor under a policy, whether on the cash or mutual plan, is
bound by the provisions of the charter relating to losses, and
must pursue the remedy there given : Koch *v.* Williamsport
Water Company, 15 P. F. Smith 288.

Mr. Justice GORDON delivered the opinion of the court, June
13th 1881.

By the act of Assembly, approved May 1st 1861, the com-

pany defendant was empowered to insure the property of others than members of the company, and it was, by this act, provided, that the insurance thus effected should not entitle the assured to the rights of membership nor subject them to the payment of assessments.

There was, as to this class of assured persons, a departure from the mutual, and an adoption of the stock plan of insurance, and for this purpose the premium notes held by the company represented its capital stock : Rhinehart *v.* The Insurance Co., 1 Barr 359. If, however, such be the case, then, whenever, by assessment regularly made, the whole or any part of such notes becomes due, there is such an indebtedness in favor of the company as may be attached by any of its creditors other than those of its own members, who must, perhaps, be confined, in the collection of their debts, to the method pointed out by the charter and by-laws of the corporation.

In Peterson *v.* Sinclair, 2 Nor. 250, as in several cases therein cited, it was held that a balance due on a subscription to the stock of a corporation was attachable as other debts. In the present case, when the assessments on the premium notes were levied, a certain percentage of the stock of the company became due and payable; and we cannot see why such a debt could not be attached by an outside creditor, as well as the balance due on an ordinary stock subscription.

The mistake made in the court below was in treating the case as though the plaintiff was a member of the company, whereas it had nothing more to do with the company than has one, who is insured in a joint stock association, to do with the affairs of such association. He is therein interested to the amount of his assurance, and no further. If he meets with a loss he requires payment, but he can require nothing more, and it is none of his concern how the money is raised by which he is paid. If payment is refused he must pursue his ordinary legal remedies, and to him attaches none of either the rights or disabilities of membership. It is true, that the charter of this company provides that assessments on premium notes may be made to pay its losses ; but what has the plaintiff to do with that ? It is said he might compel the officers of the corporation by mandamus to assess its premium notes. This might, indeed, be so, if any creditors of a corporation could compel the officers thereof by mandamus to collect the notes, stock subscriptions and other assets due it, in order to meet his demand, but not otherwise. But this is a process for the collection of corporate debts which is as yet novel and untried, and when tried, if ever such an attempt is made, will, in all probability, prove a failure. A member of the company might be entitled to a writ of this

[Hill *v.* Commonwealth.]

kind, but certainly a stranger can avail himself of no such process. What then remains? Here is a certain amount of money in the hands of one of the garnishees, and the others are debtors of the company by reason of assessments on their premium notes; therefore, as to those assured on the stock side of the company, the money thus in hand, and the money thus due, has been made from, or is due on, stock subscriptions, and, hence, the case falls within the rule of Peterson *v.* Sinclair.

But it is said this assessment was made for a special purpose; certainly, and that purpose was the payment of the debts of the company then outstanding, among which was that of the plaintiff, but for some reason or other it was not so appropriated. The loss of the railroad company was regularly adjusted and the usual certificate given, but this, when due, was not cashed, and the plaintiff was compelled to proceed to judgment and execution by attachment. Now, it is admitted that the company is, or was, at the time of the trial of this case, solvent, hence, this contention is not complicated by the question of insolvency; neither is it denied that the premium notes held by the company were assessable for the payment of this debt, or that the assessment was lawfully made and partially paid into the hands of Mr. Watson, one of the garnishees. Here then, are found in the hands of these garnishees, money of, and debts due, the defendant, and why these are not attachable on an honest and regular judgment against this solvent corporation, is something which we cannot understand. Prima facie, the presumption is that the plaintiff is entitled to the ordinary legal process in order to make its money, and we do not think that either the reasoning of the court below, nor of the counsel for the defendant, has satisfactorily rebutted that presumption.

The judgment is reversed a procedendo is awarded.