Fraternal Guardians' Assigned Estate.   Sheeler's Appeal.

*Beneficial association—Insolvency—Distribution of estate.*

The certificates of a beneficial association ran for twenty-eight years. At the end of each period of three and one half years a member, if in good standing, was entitled to receive a sum not exceeding one eighth of the amount of his certificate. After the expiration of the first three and and a half years from the date of its organization but before payment of the amounts due, the association became insolvent and made an assignment for the benefit of creditors. *Held*, (1) that the entire fund of the assigned estate after paying debts should be distributed pro rata among all of the certificate holders, and (2) that the members whose certificates were more than three and one half years old had no preference for the one eighth of the amount of their certificates.

Argued Jan. 12, 1894.   Appeal, No. 464, Jan. T., 1893, by Charles R. Sheeler et al., claiming as holders of matured certificates, from order of C. P. No. 1, Philadelphia Co., Sept. T., 1892, No. 331, dismissing exceptions to auditor's report distributing assigned estate of the Fraternal Guardians.   Before STER-

RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.

Exceptions to adjudication of assignee's account.

From the report of the auditor, J. F. Hartman, Esq., it appeared that the order of Fraternal Guardians was chartered Dec. 2, 1888, under the act of 1874, for " the maintenance of a society for beneficial or protective purposes to its members from funds collected therein." It organized by the enactment of a constitution and by-laws, which provided for the erection of a supreme lodge and of subordinate lodges. It issued certificates of membership, stipulating that any member who should comply with all the requirements of the order should, at the end of three and one half years from the date of his certificate, receive a sum not exceeding one eighth of the amount mentioned in such certificate, and that thereafter he should receive the same amount at the end of each three and one half years he continued in good standing in the order, until the certificate should mature. On Sept. 30, 1892, the order was the owner of a benefit fund aggregating about $800,000. At that time certificates had matured to the amount of nearly $600,000. On that date it made a deed of assignment of all its effects to Joseph L. Tull, Esq. On Nov. 19, 1892, the assignee filed his first account of the trust estate, charging himself with upwards of $250,000 of cash, realized out of the benefit fund. At the audit of his account, the holders of matured certificates demanded to be paid in preference to members holding unmatured certificates.

By the general laws of the lodge, " the benefit fund shall be· invested by the Supreme Trustees in such convertible securities as the Supreme Executive Committee shall approve. These investments shall be made in the name of ' The Order of Fraternal Guardians,' and shall be used only for the payment of matured or death benefits upon resolution of the Supreme Executive Committee, signed by seven members thereof."

The auditor reported in part as follows :

" The claim as presented by the certificate holders may be conveniently divided into two classes, as follows : (1) Those who hold certificates upon which all dues and assessments have been paid for a period of three and one half years or long-

er. This class will be designated matured certificate holders. (2) Those who hold certificates upon which all dues and assessments have been paid, but which have not run a period of three and one half years. These will be designated unmatured certificate holders.

" As these two classes will be frequently referred to hereafter, the auditor thought it would avoid confusion to give each class a name by which it could be identified. In calling class No. 1 matured, it will be understood throughout that this means nothing more than that the first payment was due thereon.

" Every person joining the order received a certificate, of which the following is a form :

" ' Whereas, has applied for and been admitted to membership in Lodge, No. , Order of Fraternal Guardians, and has obligated himself to obey all lawful commands of this order, whether emanating from the subordinate lodge of which he is or may be a member, or from the Supreme Lodge, or from any other duly constituted authority ;

" ' And whereas, He has paid the sum of dollars to said subordinate lodge, as an assessment on account of the benefit fund of this order, and agrees to pay further assessments of like amount whenever fully called for, and agrees to comply with all the laws, rules, and usages of this order, and especially with the conditions herein set forth.

" ' Therefore, The Supreme Lodge of The Order of Fraternal Guardians does hereby issue unto said this certificate, and declare him to be entitled to all the rights and privileges properly belonging to members of his rank and standing, including a benefit of a sum not exceeding Thousand Dollars, from the Benefit Fund of this order, which sum shall be paid in the manner and upon the conditions hereinafter mentioned, to wit :

" ' 1. If the said member shall comply with all the requirements of the order, he shall at the end of three and one half years from the date of this certificate receive a sum not exceeding one eighth of the amount mentioned in this certificate ; and thereafter shall receive the same amount at the end of each three and one half years he continues in good standing in the order until this certificate matures.

" ' 2. If said member shall be in good standing at his decease

before the maturity of this certificate, a sum not exceeding one eighth of the amount mentioned in this certificate shall be paid to                , bearing relationship to him of                , and whose receipt for said sum shall cancel in full all obligations existing under this certificate.

"' This certificate shall be in force from the date of its attestation by the signatures of the Supreme Guardian and Supreme Secretary, and, if continued in force, the last payment shall mature in twenty-eight years from that date.

"' This certificate shall be accepted by the aforementioned member in accordance with the form printed hereon.'

" Those holding matured certificates claimed that, from the fact of their certificates having run for a period of three and one half years from the date thereof, and that all dues and assessments having been fully paid for that period of time, the first installment was due thereon, and as to that installment they were creditors of the order, and were entitled to receive the full sum of one eighth of their certificates.  That at the time of the assignment, and also at the date of the maturity of the first installment of their respective certificates, there were sufficient moneys in the benefit fund to pay a full one eighth on all certificates three and one half years old.

" The unmatured certificate holders claimed that, inasmuch as an assignment had been made, the order stood upon the basis of an insolvent corporation, and the assets were to be divided among the members in the proportion to the amounts paid in by them, regardless of the fact that by the terms of the certificates the matured certificate holders had complied with the terms of their certificates, and were apparently entitled to a sum not exceeding one eighth of their certificates.

" Upon joining the order each member entered into a contract to comply with all the rules and regulations of the order, and pay any assessments, unlimited in number, during the continuance of his certificate.  His certificate was a contract for twenty-eight years, and there was an obligation upon every member to continue his certificate in force for this period of time.  This obligation was wisely imposed by the originators of the order, inasmuch as it created a mutuality between the members whose certificates matured first and those succeeding them.  And in this respect this order differs materially from

other orders of a somewhat similar character, and popularly
known as 'get-rich-quick-orders.' In the latter, when the pe-
riod of membership had been spent and a certificate matured,
the member, as such, terminated his relationship to the organ-
ization, except that of creditor, in the event of his claim not
being paid. Upon the maturity of his certificate his payments
were finished, and those that were behind him had to pay their
money to cancel his certificate, without any obligation on his
part to contribute towards maturing any subsequent member's
certificate. In the Order of Fraternal Guardians an entirely
different method was adopted. The certificate was made to
cover a long period of years, and it was to be paid in eighths.
The member receiving his first eighth could not immediately
sever his connection with the order, because the members fol-
lowing him had the right to be matured likewise, and from a
fund which it was his duty for a period of twenty-eight years
to maintain by assessments to be paid by him on his certificate,
and by virtue of his membership.

"In this respect [the duty of maturing one another was
mutual, and the unmatured certificate holder had as much right
to expect and depend upon the matured certificate holder to
mature his certificate, as the matured certificate holder had
the right to take from the benefit fund the amount of his pay-
ment.] [1]

" The benefit fund of this order might well be likened unto
the reserve fund of a life insurance company. Surely, every
member had an equitable interest in a portion of the assess-
ments paid by him into the benefit fund. His entire assess-
ments could not be swept away by any payment of matured
certificates. A court of equity would restrain such an action
on the part of the officers, and compel them to levy sufficient
assessments to avoid an entire depletion of the benefit fund.

" The certificate stipulates that if the member shall comply
with all the requirements of the order, he shall, at the end of
three and one half years from the date of his certificate, re-
ceive a sum not exceeding one eighth of the amount mentioned
in his certificate. What is meant by a sum not exceeding one
eighth? Is not this merely a maximum limit of the amount
to be paid to the certificate holder? [Can it be argued that a
contract to pay any amount not exceeding a certain sum is a

contract to pay that sum? The mere interrogation suggests its absurdity. It was intimated at the argument that a sum not exceeding $625 might mean five cents. True enough, it might. But in an uncertain matter like this the law in its wisdom would say this meant a sum which could be reasonably paid with a due regard to all the circumstances of the case.] [2] Now, what would have been a reasonable sum to have paid the matured certificates in this instance? It appears by the appraisement that the entire assets of the order amounted to $810,000. On the day the assignment was made there were nearly $600,000 due to matured certificate holders. In two months more enough certificates would have matured to wipe out the entire benefit fund that it had taken nearly four years to accumulate. The payment of the maximum sum mentioned in the certificates would have plunged the order into bankruptcy. [Is it at all in doubt whether, under such circumstances, a court of law or equity would compel the payment of the maximum sum on the certificates? It may be said that the supreme executive committee had power to call an unlimited number of assessments; but the exercise of it would have been disastrous to the order.] [3] [Under these circumstances, the auditor cannot see how it would be possible to award the matured certificate holders the maximum limit of their certificates.] [4]

" The matured certificate holders claim to be creditors of the order for the amount of the first payments on their certificates, and in support of this position relied upon two cases: Vanatta v. New Jersey Mutual Life Insurance Co., 31 N. J. Eq. 15, and Mayer v. Attorney General, 32 N. J. Eq. 820. While the above appear to be two cases, they are really one, as the same case came twice before the court in settlement of the one insurance company, and they may, therefore, be considered together.

"In the settlement of the affairs of the New Jersey Mutual Life Insurance Co., which had become insolvent, there appeared to be three classes of claimants: (1) Endowment policies that had matured by lapse of time previous to insolvency. (2) Policies upon which, before insolvency, all payments had been made that were ever to be made; but the time of maturing the policies did not expire until after insolvency. (3) Unma-

tured policies. In marshaling the assets the court treated the first-named endowment policy holder as a creditor, and awarded him payment in full out of the assets, on the ground that he had terminated his membership and become a creditor; the other two policy holders came in afterwards pro rata.

"In Mayer v. Attorney General the court said: 'The termi nation of the risk and of membership effected the change in the status of the policy, from which its right to be a preferred claim is derived. Prior to such change it was entitled, as between it and the other policies, to share in the company's reinsurance or reserve fund. By such change it became a debt owing by the company to a third party, not bound to make further payments of premiums, and not entitled to act in the management of the business.'

"In the last named case the question arose between the policy holder and an insurance company.

"The auditor does not think that the case of the Fraternal Guardians can be governed by the strict rules applied to insurance companies. The Fraternal Guardians was not a corporation carrying on life insurance for profit, nor were the certificates issued to members in any sense policies. The paper a person received upon joining the order was not an incontestable and unalterable contract between the member and the order. It was subject to change and modification by the Supreme Lodge whenever an amendment to the laws of the order was deemed necessary.

"The case of Mayer v. Attorney General also takes the ground that when a policy matures the holder severs his connection with the company and becomes a creditor for the amount due him. In this the case of the Fraternal Guardians also differs. The certificate holder here was a member for twenty-eight years. He was still a member after his first installment became due, and he was bound to pay further assessments and continue to take part in the management of the order. [The auditor cannot bring this case within the ruling of Mayer v. Attorney General. Other conditions exist here which did not arise in that case.] [5]

"Apart from all that has been said, the question in this case, in the opinion of the auditor, can be decided upon other grounds than those heretofore touched upon. [Regarding this order,

and the certificates issued by it, in the light of a contract between the parties, the auditor thinks that there is such a premature termination of it that the rights of the parties require an equitable adjustment.] [6] [The matured certificate holders place themselves in the anomalous position of seeking the fruits of a contract, and at the same time refusing to perform its stipulations.] [7] [They, with the unmatured certificate holders, by their representatives in the Supreme Executive Committee, have made it impossible to carry out the contract entered into by the certificate holders by reason of the assignment.] [8] [There was a mutual duty existing between the two classes to mature each other, yet these matured certificate holders now claim that they are entitled to receive from the unmatured certificate holders three dollars for every one paid in by them, and, at the same time, by their acquiescence in the assignment, relieve themselves from all future assessments to mature those that follow.] [9] It is not the custom of courts to construe the law of contracts in this one-sided manner.

" There is still another and a final reason why matured certificate holders should not receive the amount of their matured benefits. This order embarked in a business, and every member contributed equally, according to his interest, towards consummating its purposes. The funds have been well preserved, and the amount now in the hands of the assignee, if there has been no shrinkage in the order's assets, is sufficient to refund every member in good standing every dollar that he paid into the benefit fund. The organization has been honestly conducted, but, through lack of confidence of the community in enterprises of this character, it has been forced to close up its business and distribute its assets. The officers of the order are to be complimented upon their action in deferring payment of matured certificates. The first certificates to mature were those held by the officers of the concern and those instrumental in starting the organization. It would have been to their pecuniary advantage to have paid the certificates as they became due, but they refrained from doing so, as such action might have been followed by the appointment of a receiver, as a doubt existed whether or not such a course would not have been in excess of their charter rights. As the matter now stands, however, the organization has not been guilty of committing any ultra vires

acts, and there is the greatest moral certainty that it never will be in a position to exceed its charter rights.

" [The distribution of its funds pro rata among its members will prejudice no one. To prefer the matured certificate holders would enrich a few at the expense of many.] [10]  Equity does not commend, nor law warrant, any other than a pro rata distribution among its members of the assets of the order, and the distribution will, therefore, be made accordingly."

Charles R. Sheeler and others holding matured certificates excepted to the portions of the auditor's report inclosed in brackets.

Exceptions overruled and report confirmed. Exceptants thereupon appealed.

*Errors assigned* were in overruling exceptions, quoting them.

*John G. Johnson, Thomas Diehl* with him, for appellants, cited: Christian's Ap., 102 Pa. 184; B. & L. Assn. v. Silverman, 85 Pa. 394; Dean's Ap., 98 Pa. 104; Jordan's Ap., 107 Pa. 84; Vanatta v. Ins. Co., 31 N. J. Eq. 15; Mayer v. Attorney General, 32 N. J. Eq. 815; Manhattan Hardware Co. v. Phalen, 128 Pa. 110; Oil Creek R. R. v. Penna. Transportation Co., 83 Pa. 160; Wright v. Pipe Line Co., 101 Pa. 204; 2 Morawetz, Corp. § 689; 2 Beach, Corp. § 425.

*F. Carroll Brewster*, for appellees, cited: Vanatta v. Ins. Co., 31 N. J. Eq. 15; Mayer v. Attorney General, 32 N. J. Eq. 820; Criswell's Ap., 100 Pa. 493; Christian's Ap., 102 Pa. 184; People v. Security Life Ins. Co., 78 N. Y. 115; Fogg v. Order of Golden Lion, 33 N. E. R. 692.

PER CURIAM, February 12, 1894:

All the facts necessary to a proper understanding of the questions presented by the specifications of error in this case are sufficiently set forth in the learned auditor's report. Twelve exceptions filed to said report were dismissed by the court, and distribution decreed in accordance with the schedule submitted by the auditor. Dismissal of said exceptions, all of which are recited in the first twelve specifications, and refusal to award the fund in the hands of the assignee to the holders of matured

certificates in preference to the holders of certificates which had not matured at the date of the assignment, constitute the subjects of complaint in the several specifications of error. We have considered the questions involved, and are of opinion that the findings of fact and conclusions of the learned auditor are substantially correct, and, for reasons fully set forth in his report, the decree should be affirmed. In view of the insolvency of the order, the distribution made by the court below is just and equitable.

Decree affirmed and appeal dismissed with costs to be paid by appellants.