MICHIGAN EARLY CHILDHOOD CENTER, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Michigan Early Childhood Center, Inc. v. Commissioner
Docket No. 9824-77X.
United States Tax Court
T.C. Memo 1978-186; 1978 Tax Ct. Memo LEXIS 329; 37 T.C.M. (CCH) 808; T.C.M. (RIA) 780186; May 22, 1978, Filed Kathryn J. Cole (an officer), for the petitioner. Kevin M. Bagley, for the respondent. SCOTT MEMORANDUM OPINION SCOTT, Judge: Petitioner has brought this action for a declaratory judgment pursuant to *330 section 7428, I.R.C. 1954, [1] challenging respondent's determination in his final letter of adverse determination issued June 24, 1977. In this letter respondent determined that petitioner did not qualify for exemption from Federal income tax under section 501(c)(3) because: Providing custodial day care services for a fee does not further an exempt charitable or educational purpose under section 501(c)(3) of the Code. Providing such services does not serve a public interest as required by section 1.501(c)(3)-1(d)(1)(ii) of the Income Tax Regulations.
The parties agree all jurisdictional requirements have been met. Pursuant to Rule 217 of the Rules of Practice and Procedure of this Court, the parties have filed with the Court a stipulation of the Administrative Record. Petitioner challenges respondent's determination that it provided custodial day-care services rather than an educational program and that it did not serve a public interest. The issue before us is, therefore, whether petitioner was operated *331 exclusively for educational purposes within the meaning of section 501(c)(3). The Administrative Record filed with us shows the following facts: Petitioner is a nonprofit corporation chartered under the laws of the State of Michigan in October 1975. Its principal office is located in Lansing, Michigan. Its Articles of Incorporation, as amended, state the purposes for which it is organized as follows: To operate exclusively an early childhood center to provide a full day, educational experience for children who are under six years of age. Rights and privileges of enrollment in the center are open to all regardless of race, sex, religion or creed. Petitioner's purposes, as stated in its by-laws, are the following: In exercise of its legal powers, the Agency aims to promote child development through: a) the operation of a quality care facility b) the provision of education for parents of young children in this child development center c) the leadership in setting standards for good educational and social environments for young children. At petitioner's headquarters, located on North Clippert Street in Lansing, Michigan, a facility for children between the ages *332 of 15 and 72 months is operated. In addition, petitioner has an infant home program for children between the ages of one and 15 months at residential homes throughout the community. Enrollment in each residential home is limited to 5 infants who are cared for by 2 paid adults under the supervision of a professional staff member of petitioner. The trained professional visits each infant care home daily and outlines the daily activities to be followed by the adults caring for the infants. The activities planned are geared to developing the awareness of the infant to his environment, the physical development of the infant, and his word recognition and early speech. The adults are chosen for their ability to follow the program outlined by the professionals of the center as well as their facility for relating to infants. The president and director of the center, Kathryn J. Cole, has a B.S. Degree and an M.S. Degree in early childhood development and education. The educational coordinator of the center, Marcia Rysztak, also has a bachelor and masters degree in these fields. There is one other staff member with both a B.S. and M.A. in early childhood development and education and *333 the lead teacher of each class has at least a B.S. Degree in early childhood education. All members of the staff have been trained in early childhood education. Petitioner also requires that all staff members participate in an on-going training and evaluation process throughout their employment. Children 15 to 27 months are classed as young toddlers; children 27 to 36 months as older toddlers; and children 36 months or over as preschool. The paid professional staff consists of one adult for every 4 children in toddler classrooms, and one adult to every 5 to 7 children in preschool classrooms. During 1976 enrollment at the center included 30 toddlers and 25 preschoolers. In addition to the paid staff, approximately 25 college students participate in work with the children each term under a training program which is operated by petitioner under contract for students majoring in early childhood development at Lansing Community College. Petitioner is also used in a training program for medical students in their course in pediatrics at the Michigan State Medical School. The fees charged by petitioner for its services are as follows: $10 Yearly Equipment Fee; Infants $8.50 a *334 day; Toddlers $7 a day (Diaper.30" a day); Preschoolers $6.70 a day. The fees are kept at estimated cost in order to make the facilities of the school available to families of below average or average income. About three-fourths of the families with children enrolled are in these income brackets generally with both parents being employed to produce this income. The center operates from 7:00 a.m. to 6:00 p.m. daily, Monday through Friday, for toddlers and preschoolers. The center also accepts children on a part-time basis and provides a fee arrangement for this service. However, preference is given to full-time enrollees and enrollment on a part-time basis is available only when space allows. The infant homes are open from 7:30 a.m. to 6:00 p.m. Petitioner's financial statements show that its operations in 1975 produced a slight loss. There is a planned daily program for each day in the week for each class and the lead teacher and other teachers of each class implement this program. Each day's program is geared to some specific purpose for the education or development of the child. Times are provided for group play and individual play which is subtly directed by the teachers *335 to develop certain aspects of a child's reasoning and creative abilities. Weekly themes are chosen for each class as a focus for learning. For example, themes are drawn from the natural world such as winter, history, Independence Day, folk holidays such as Halloween, and many other areas. These themes are planned for use in such a manner as to enhance language development (learning new words), muscle or memory development (running games class), abstract thinking (questions of "why and how"), and music appreciation (singing, listening to records). The older children are taught school readiness concepts, such as numbers and recognition of letters, and the younger children are taught colors and shapes. The educational emphasis of the entire program includes making learning fun, learning social skills such as sharing and taking turns, and learning good personal habits. It is respondent's position that, although most of petitioner's activities have an educational component, petitioner is nevertheless operated in furtherance of a non-exempt purpose which is substantial in nature, namely the provision of custodial services. Respondent argues that for this reason petitioner has failed *336 to show that it is "organized and operated exclusively for educational purposes" as required by section 501(c)(3). [2] Respondent, in support of his position, relies on the statement in Better Business Bureau of Washington, D.C. v. United States,326 U.S. 279, 283 (1945), that "the presence of a single non-educational purpose, if substantial in nature, will destroy the exemption regardless of the number or importance of truly educational purposes." Respondent also relies on a statement to the same effect in American Institute for Economic Research v. United States,302 F.2d 934 (Ct. Cl. 1962). *337 Respondent acknowledges that in many instances an educational institution is required to give incidental custodial care for the minimum physical needs of its students, but argues that the custodial care furnished by petitioner for children of working parents is so extensive that it cannot be considered an incidental service. Respondent particularly stresses the services rendered by petitioner for infants and toddlers. He quotes from information in the record with respect to the Infant Home Program which states that this program is designed to provide: Full day care to meet the needs of parents who are employed full time. Homes open at 7:30 a.m. and close at 6:00 p.m. The daily program is geared to meet each child's needs on that day. Flexibility is the main ingredient. Each caregiver becomes an expert in understanding the moods and needs of each child, and combines that knowledge with her intuition to help the child have a pleasant day. Parents are welcomed and encouraged to phone during the day to share any concern or inquire about their child. Respondent also stresses the fact that most of the children below the age of 30 months enrolled in petitioner "come from *338 families where schooling is sought because of parents working." He also stresses the fact that priority is given by petitioner to families needing full day care, 5 days a week. In order to be entitled to an exemption under sections 501(a) and 501(c)(3), an organization must show that it is organized and operated exclusively for one or more of the exempt purposes. Here, the only exempt purpose petitioner claims is educational. Petitioner claims that it is organized and operated exclusively for this purpose within the meaning of the statute. [3]
The record in this case amply demonstrates that petitioner was organized for educational purposes and we gather that respondent does not contend to the contrary. Petitioner's *339 charter states that it was organized for educational purposes and the record totally supports that this was the purpose for which petitioner was organized. In our view the fact that most of the children below the age of 30 months come from families where both parents are working and the fact that preference is given to full-time students does not affect the purpose for which petitioner is organized and operated. The statute, however, does clearly require that petitioner be operated for an exempt purpose as well as organized for such a purpose. The real issue here, therefore, is whether petitioner's operations are exclusively educational since of necessity, because of the age of its enrollees, it must furnish more custodial care than might be furnished by an educational institution for older students. In our view the record in this case shows that the program for children from 15 months to 72 months which is operated by petitioner on North Clippert Street in Lansing, Michigan, was educationally oriented in its entirety with custodial care being incidental only because of the needs of the *340 children for such care if they are to receive the education offered. The educational orientation of the program is not only demonstrated by the professional expertise of the staff, the nature and quality of the program offered to the children and the use of petitioner as a source of training for students at the Lansing Community College majoring in early childhood development and medical students from Michigan State University in their studies in pediatrics, but also through opinions expressed by a number of individuals who are experts in the field of early childhood education. For instance, the director of the office for young children of the Ingham County Health Department, Lansing, Michigan, after outlining the extent to which she had worked with petitioner and the competency of petitioner's staff, stated that "the Michigan Early Childhood Center has been a model educational program for children in our community." She also pointed out that play for a small child when properly directed is education of that young child. An instructor in early childhood education at Michigan State University who had both observed and participated in petitioner's program stated: The program provides *341 a balance of educational experiences for children each day. Each week's program is built around specific themes and concepts. Science, mathematics, reading readiness, large and small muscle plans are part of each day's curriculum. Each day also includes individualized and small group experiences for each child. * * * Other equally competent experts stated similar opinions. While the record is not as precise as to the specific educational aspects of petitioner's program for infants under the age of 15 months, in our view there is ample evidence here to demonstrate that this part of petitioner's program was exclusively educational as that term is used in section 501(c)(3). The infants were taught during the necessary custodial care many things that enhanced their development. They were taught an awareness of the objects around them, abstract reasoning abilities, word knowledge and muscular control. This record demonstrates that under the planned professional program for the infants, their necessary care was made largely a learning experience. In the recent case of San Francisco Infant School, Inc. v. Commissioner,69 T.C. 957 (1978), we found, under facts *342 similar to those here involved that the custodial care necessary because of the young age of the organization's students did not cause that purpose to be a substantial purpose other than education. [4] We there pointed out that the custodial care was provided in such a way as to be an educational experience for the infants and therefore was itself a part of the education of the students. Here also the record shows that the necessary custodial care was made an educational experience for the infants and small children. Respondent on brief makes no argument with respect to petitioner not serving a public *343 purpose aside from his argument that custodial care for a fee is not a public purpose. As petitioner points out, the education of children has uniformly been viewed as a public purpose within the meaning of section 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Since we have concluded that petitioner is operated exclusively for educational purposes, we conclude that it does serve a public rather than a private interest.We therefore hold that petitioner is entitled to exemption from tax under section 501(c)(3). An appropriate decision will be entered. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. SEC. 501. EXEMPTION FROM TAX ON CORPORATIONS, CERTAIN TRUSTS, ETC. * * *
(c) List of Exempt Organizations.--The following organizations are referred to in subsection (a): * * *
(3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals, no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, (except as otherwise provided in subsection (h)), and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office.↩
3. There are, of course, other requirements of sec. 501(a) and (c)(3)↩, namely that no part of the earnings enure to the benefit of a private shareholder or individual and that no substantial part of the organization's activities be devoted to political or lobbying activity. However, there is no contention by respondent that petitioner does not meet these two requirements.
4. In San Francisco Infant School, Inc. v. Commissioner,69 T.C. 957 (1978), we stated as follows: Respondent has consistently viewed such custodial services as advancing educational purposes. See, e.g., Rev. Rul. 76-336, 1976-2 C.B. 143 (providing housing not otherwise available to college students); Rev. Rul. 67-291, 1967-2 C.B. 184 (providing a training table for coaches and members of a university's athletic teams), Rev. Rul. 67-217, 1967-2 C.B. 181↩ (providing food and housing for the students and faculty of a university). * * *