### BALTIMORE EQUITABLE SOC. v. UNITED STATES.

No. L—292.

Court of Claims.

May 8, 1933.

430

Newton K. Fox, of Washington, D. C. (Adrian C. Humphreys, of Washington, D. C., on the brief), for plaintiff.

Lisle A. Smith and Charles F. Kincheloe, both of Washington, D. C. (Charles B. Rugg, Asst. Atty. Gen., and Walter W. Mahon, of Washington, D. C., on the brief), for the United States.

Before GREEN, WHALEY, WILLIAMS, and LITTLETON, Judges.

GREEN, Judge.

This action is begun to recover taxes alleged to have been wrongfully collected from plaintiff for the years 1925, 1926, 1927, and 1928.

The plaintiff is a voluntary association doing an insurance business. The Commissioner assessed upon its net income for the years mentioned above the corporation income tax. The plaintiff claims to be exempt therefrom under the provisions of the statute that read as follows:

Sec. 103.[1] *"Exemptions from Tax on Corporations*

"The following organizations shall be exempt from taxation under this title— * * *

"(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses."

There is no dispute as to the facts, although there is a dispute as to the ultimate conclusions which may be drawn therefrom. As stated above, the plaintiff is a voluntary association doing a fire-insurance business, without having any capital stock. Its original charter provided for insuring houses from loss by fire and that each member should contribute annually to the losses and share the gains and advantages arising by reason of the covenants of insurance and the payments required from the subscribers or members. Every person insuring was required to deposit a certain sum which was to be returned at the expiration of the policy taken out with a proportionable dividend of the profits that had accrued, deducting losses and incident charges. Under the terms of the charter the members of the society secured insurance policies for a term of seven years, and at the conclusion of the seven-year period each member was required to pay his respective proportion of all losses and charges for that period. Later, in 1865, a plan of perpetual insurance was adopted under which a member on the payment of a fixed deposit was protected against partial or total loss by fire of the property insured to the extent insured, perpetually or to such a time as he ceased to be a member by withdrawing his deposit. Prior to the time when the plan of perpetual insurance was adopted, and in 1858, a resolution was adopted authorizing the society to

write term insurance at a fixed premium for a period of less than seven years. The plaintiff contends that under these facts it was at all times a mutual company in which the members were the parties insured and that the provision for writing term insurance was merely incidental.

The defendant on the other hand contends that it is not a mutual company within the meaning of the statute, and that its income is not "used or held for the purpose of paying losses or expenses." The latter objection will first be considered.

Finding 9 shows that the company had a surplus of $1,336,482.57 in 1924 which increased each year thereafter until in 1928 it reached the sum of $1,719,610.44. The defendant contends that this surplus was larger than was necessary to pay the ordinary losses and expenses of the company. The plaintiff practically admits this, but argues in effect that under the circumstances of the case no more is carried than would be dictated by ordinary prudence. The evidence shows that the company limits its risk to buildings in the city of Baltimore, which undoubtedly enhances the amount which it might in event of an extensive fire be called upon to pay. The company was in existence at the time of the great Baltimore fire which so largely depleted its surplus that it needed to be increased and built up. It is now contended that the company carries no more than is proper in view of the fact that such a fire might recur. As we view the situation, while it is not likely that there will be another such great conflagration it is quite possible. Defendant calls attention to the fact that the surplus is increasing somewhat each year, but we do not think that this shows that it is not held for the purpose of paying losses or expenses. The only other disposition that could be made of it is to distribute a certain portion thereof to the stockholders, for which provision has been made by a resolution adopted providing that if at any time the "reserved surplus" should amount to a sum equal to 10 per cent. of the total amount of the risks assumed by the plaintiff, plus $60,000, such excess should be distributed among the members as a dividend; but no dividend has ever been paid. We doubt whether the word "dividend" is proper as applied to such a distribution. Certainly it would not be a distribution of any profits but merely a return to the members of amounts collected which were in excess of the amount necessary to meet losses and expenses. The distribution is made when it is determined that it is

[1] Revenue Act of 1928, 45 Stat. 791, 812 (26 USCA § 2103 (11). The same provision was contained in section 231 of the Revenue Act of 1926, 44 Stat. 9, 39 (26 USCA § 982(11).

no longer necessary to hold these amounts to pay losses and expenses; and if a larger amount was accumulated than necessary or held longer than necessary the purpose of the accumulation was to pay losses and expenses therewith, and the action of the association in accumulating more than was necessary or holding the accumulations longer than was necessary was merely an error in judgment and does not affect the purpose and object in view.

█ The other objection, as we think, is more serious and fatal to the plaintiff's case. As before stated, the plaintiff was originally a purely mutual company in which the premiums paid by each member constituted a common fund devoted to the payment of any losses that might occur and in which all of the persons insured were members of the association and equally assessed in proportion to each member's insurance either to meet losses which might occur in the future or which the company might not have on hand funds to discharge. But subsequently and during a period which involved the years for which the taxes in question were levied the company or association by virtue of another resolution authorized the issue of term insurance for a fixed premium for a period of less than seven years. The plaintiff contends that as only about 10 per cent. of its insurance was written upon the term plan for a fixed premium, this amount is too small to affect the general nature of the company. We do not think this position is well taken. As to those who receive this term insurance at a fixed premium, there was no mutuality. They paid in advance for their insurance, and that was the end of all payments and liabilities so far as they were concerned. That the number so insured is small compared with the total number insured under the mutual plan appears to us to make no difference. There is nothing in the evidence to show that there was any restriction on the number that might be so insured or the proportion of the risks that might be so undertaken. If it had been one-third instead of one-tenth, we think no one would contend that the company could receive the benefit of the exemption. We do not think the provision for exemption applied to a company that was partly mutual and partly not. Such a holding would, we think, extend the exemption to cases that were not within the intention of Congress, for there would be no way of drawing the line except to say that when a

large proportion of the insurance written was not upon the mutual plan the company was not a mutual company, and that when only a small proportion was so written the association still remained mutual.

There are a number of decisions which hold that the fact that a building and loan association loans money to nonmembers or receives deposits will not deprive it of the exemption from income tax granted to building and loan associations by the federal statute. But we think that the cases are not parallel with the one at bar. In the case of the building and loan associations, the business which they did with nonmembers was not building and loan business, if we consider the words "building and loan" should be construed together. Building and loan associations are organized for the purpose of making loans to members for the purpose of constructing buildings (usually homes) and receiving installment payments to cancel the loans. In the cases cited, the deposits received or the loans made had nothing to do with building purposes. So far as the building and loan business was concerned the companies were still purely mutual and the members shared equally in the profits or losses as the case might be. But in the instant case the "term insurance," while written for nonmembers, was insurance business nevertheless, and as we construe the statute, in order to be entitled to the exemption the plaintiff must show that the insurance business was conducted on a mutual basis. This was clearly not the case as to the policyholders who took out term insurance. They were not members, were not entitled to any refund of premiums paid upon the surrender or cancellation of their policies, or to share in the distribution of the earnings and profits of the company. In short, so far as those who held policies for term insurance were concerned, there was no mutuality.

We think that when Congress provided the exemption set out in the statute it intended that it should apply only to companies that are purely mutual and that consequently the plaintiff was subject to the corporation tax.

It follows that the plaintiff's petition must be dismissed, and it is so ordered.

LITTLETON, J., dissents.

BOOTH, C. J., took no part in the decision of this case on account of illness.