582

MacLAUGHLIN v. PHILADELPHIA CON-
TRIBUTIONSHIP FOR INS. OF HOUS-
ES FROM LOSS BY FIRE.

No. 5411.

Circuit Court of Appeals, Third Circuit.

Sept. 27, 1934.

Rehearing Denied Dec. 3, 1934.

Frank J. Wideman, Asst. Atty. Gen., Se-
wall Key and Edward H. Horton, Sp. Assts.
to Atty. Gen., and Charles D. McAvoy, U. S.
Atty., and T. J. Curtin, Asst. U. S. Atty.,
both of Philadelphia, Pa., for appellant.

Frederick E. S. Morrison, Charles J. Bid-
dle, and Drinker, Biddle & Reath, all of Phil-
adelphia, Pa., for appellee.

Before WOOLLEY, DAVIS, and
THOMPSON, Circuit Judges.

DAVIS, Circuit Judge.

The question in this case is whether or
not the Philadelphia Contributionship, the
plaintiff-appellee, is exempt from taxes on
its income under section 231 (11) of the Reve-
nue Act of 1926 (26 USCA § 982 (11), as a
mutual fire insurance company, "the income
of which is used or held for the purpose of
paying losses or expenses."

The plaintiff is a mutual fire insurance
company largely doing business in Philadel-
phia. Only the holders of policies of insur-
ance issued by the company are members and
no payments have ever been made to any one
other than the holders of its policies with the
exception of operating expenses.

The plaintiff issues perpetual contracts
of fire insurance for which a single premium
deposit is paid in to the plaintiff at the time
the policy is issued. If a holder cancels a
contract of insurance within three years of
the time that the plaintiff issued it, 90 per
cent. of the premium deposit is returned to
him; if he cancels it between three and five
years, 95 per cent. is returned; and if it is
canceled after five years, the full amount is
returned. Since 1895, the plaintiff has dis-
tributed annually out of its net investment
income, to holders whose policies have been in
force for more than ten years, amounts equal
to 10 per cent. of their respective premium
deposits. The plaintiff returned $44,233.80
in 1925 and $45,800.33 in 1926 to its policy-
holders.

Premium deposits are entered in the books
of the plaintiff as liabilities to their full
amount. The deposits and income from the

investments of the plaintiff are carried in a general fund. At the end of 1925 and 1926 the plaintiff held premium deposits of $1,149,035.74 and $1,198,251.14, respectively; its surplus was $8,174,884.50 and $8,607,028.40; its net investment income was $199,925.62 and $153,043.82; its policies outstanding were in the amount of $44,292,000 and $46,366,000.

The Commissioner of Internal Revenue disallowed the plaintiff's claim to exemption under section 231 (11), 26 USCA § 982 (11), and determined that under section 234 (a) (11), 26 USCA § 986 (a) (11), the plaintiff had a taxable net income of $199,925.62 for 1925 and $153,043.82 for 1926. The Commissioner permitted the plaintiff to deduct premium deposits for the years involved.

The plaintiff paid the taxes assessed and, after filing claims for refund, brought this action in the District Court to recover the amounts so paid. The case was tried to the District Court and it rendered judgment for the plaintiff on the ground that it was an organization within the meaning of section 231 of the Revenue Act of 1926 (26 USCA § 982) which provides:

"Sec. 231. The following organizations shall be exempt from taxation under this chapter— * * *

"(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations * * * the income of which is used or held for the purpose of paying losses or expenses."

The defendant appealed.

The Commissioner determined that the plaintiff should be taxed under section 230 (26 USCA § 981 note), which provides for corporations generally and that it was entitled to the deductions allowed in section 234 (a) (11), which provides:

"(a) In computing the net income of a corporation subject to the tax imposed by section 230 [section 981 of this title] there shall be allowed as deductions: * * *

"(11) In the case of mutual insurance companies ( * * *, but not including mutual life or mutual marine insurance companies) requiring their members to make premium deposits to provide for losses and expenses, there shall be allowed, in addition to the deductions allowed in paragraphs (1) to (9), inclusive, unless otherwise allowed, the amount of premium deposits returned to their policyholders and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves." U. S. C. App., title 26, § 986, 26 USCA § 986 (a) (11).

Under the above sections of the Revenue Act of 1926 considered in the light of the facts in this case, we are convinced that the learned court was in error in setting aside the determination of the Commissioner. The plaintiff contends that the exemption provision of section 231 refers to the primary or basic purpose, to which the income of a company claiming exemption is applied, of paying losses or expenses, without excluding the return of a part of the premium deposits to policyholders as an incidental application of some of the excess income, not used for the primary purpose. The defendant denies this. A lengthy discussion is not necessary to dispose of such an evasive question. At any rate, the primary purpose to which the income of all insurance companies is applied is to pay losses or expenses.

But sections 231 (11) and 234 (a) (11) are in pari materia and must be construed together in order to give them their proper effect.

When the two sections are considered together in the light of the history and the apparent legislative intention in enacting them, there is no reason why we should try to read qualifying words into section 231 (11) such as "primary" or "basic." The purpose of the statutes is clear and unambiguous if the words used in them are given their natural meaning. Moreover, exemption statutes are strictly construed.

The Revenue Acts of 1916, § 11 (a) (10), 39 Stat. 766, 1918, § 231 (10), 40 Stat. 1076, and 1921, § 231 (10), 42 Stat. 253, exempted local, mutual companies whose income consisted "solely of assessments" from members "for the sole purpose of meeting expenses." The Revenue Act of 1924, § 231 (10), 26 USCA § 982 note, required 85 per cent. or more of the income of mutual companies to come from members and to be used "for the sole purpose of meeting losses and expenses," and this act, except in a case not material here, did away with the necessity that the organizations claiming exemptions be of a local character. The Act of 1926, which is involved here, and the Acts of 1928, § 103 (11), 26 USCA § 2103 (11), and 1932, § 103 (11) (26 USCA § 3103 (11), exempted from taxation those mutual companies, "the income of which is used or held for the purpose of paying losses or expenses."

584

Revenue acts have regularly provided for a deduction in the case of mutual insurance companies, that are taxable as an ordinary corporation, of the amount of premium deposits returned to the holders of policies and the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves. The administrative interpretation of the provisions have been consistent and the Congress has re-enacted the provisions in the face of this interpretation some seven times. Regulations 45, article 572; Regulations 62, 65, 69, article 571; Regulations 74 and 77, article 1014.

■ If we were to hold under the facts of this case that the plaintiff was exempt from taxation under section 231 (11), it would be the equivalent of holding that section 234 (a) (11) was useless legislation. But section 231 (11) was intended to apply to those mutual insurance companies whose sole purpose is to provide protection for its members at cost. In such organizations, the cost of insurance is defrayed by assessments, or payments to meet losses and expenses. The consideration of profits is never involved.

If we examine the facts of this case, we find that members of the plaintiff not only obtain perpetual insurance protection at an extremely low rate, but also make a splendid investment. The plaintiff, as above stated, held premium deposits of $1,149,035 and $1,198,251.14 at the end of 1925 and 1926. Its surplus at the end of those years was $8,174,884.50 and $8,607,028.40. By the law of the commonwealth of Pennsylvania under which it operated, the plaintiff was required to hold the amount of premium deposits less 5 per cent. in carrying on business. In 1925 and 1926, the plaintiff had a net investment income of $199,935.62 and $153,043.82.

The language of the sections involved here is plain and does not conflict in any way. The findings of the District Court show plainly that the plaintiff's income was used and held, not only for paying its losses and expenses, but for investment for the benefit of its members. Since 1895, the plaintiff has distributed annually to those who have held policies for ten years and more sums equal to 10 per cent. of their premium deposits.

The plaintiff says that defendant bases its contention on the assumption that it is not a mutual company. But it is plainly such an organization. Both section 231 (11) and 234 (a) (11) apply to mutual companies. Only a mutual company which uses or *holds its income* for the *purpose* of paying *losses* or *expenses* is exempt from taxation, but a mutual company which is outside of the purport of that section may deduct the amount of premium deposits held for expenses and losses or returned to holders of policies.

There is certain language in the opinion in Baltimore Equitable Society v. United States (Ct. Cl.) 3 F. Supp. 427, 431, that might be considered contrary to the decision of this case. However, the facts in this case conclusively show that the plaintiff does not use or hold its income for the purpose of paying losses or expenses. The plaintiff earns large profits. It is not the type of mutual company intended to be exempt from taxation.

The judgment of the District Court is reversed.