## KEYSTONE MUT. CASUALTY CO. v. DRISCOLL, Collector of Internal Revenue.

### No. 1273.

District Court, W. D. Pennsylvania.

April 21, 1942.

Smith, Buchanan & Ingersoll and David B. Buerger, all of Pittsburgh, Pa., for plaintiff.

Charles F. Uhl, U. S. Atty., Elliott W. Finkel, Asst. U. S. Atty., both of Pittsburgh, Pa., Samuel O. Clark, Jr., Asst. Atty. Gen., and Andrew D. Sharpe and Paul R. Russell, Sp. Assts. to the Atty. Gen., for defendant.

GIBSON, District Judge.

By the present action the complainant seeks to recover $9,272.54 which it alleges was paid by mistake as income taxes for the years 1936, 1937 and 1938. It asserts that it was exempt from payment of income taxes during those years under Section 101(11) of the Revenue Acts of 1936 and 1938, 26 U.S.C.A. Int. Rev.Code, § 101(11). That section, identical in each Act, follows:

"§ 101. Exemptions from tax on corporations.

"The following organizations shall be exempt from taxation under this title [chapter]—

\* \* \* \* \* \*

"(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purpose of paying losses or expenses."

The quoted provision, being for exemption, must be strictly construed.

This paragraph, repeated from a number of prior Revenue Acts, has been construed by the courts in a number of cases. The consensus of the opinions is that the section contemplates an association of individuals whose sole object is to obtain insurance for themselves at cost, and, if amounts greater than necessary cost had been collected, that excess was to be returned to members in some form. The maintenance of a reasonable reserve is

not prohibited, but it must be for the one purpose of paying losses and expenses, with ultimate return of excess to members. In other words, the association is for the benefit of the members, and not the members for the benefit of the association.

The complainant was chartered as a mutual casualty company on July 22, 1936, and has since been operating as such under the supervision of the Insurance Department of Pennsylvania. The principal founder was Mr. H. P. Kann, who was then conducting an ordinary insurance agency. A fairly large proportion of the signers of the petition for charter were the members of his office force who are now employed by the complainant at reasonable salaries. Mr. Kann deposited $10,000 as capital for the proposed association (required by statute), and he and other signers each agreed to an assessment equal to the amount of premiums paid in case of necessity. In two years and a half the company had acquired a very considerable reserve, but one not greater than approved by the Insurance Department of Pennsylvania. No returns of excess in premiums have been made to persons insured, such excess being added to reserve for the purpose of increasing the standard and credit of the company and allowing it, in time, to do business in neighboring states which required larger reserves than demanded by Pennsylvania—not to say for forming an ultimately large company which could pay comfortably large salaries. The underlying idea of the founder was apparently sound, in that at the end of two and one-half years the company felt itself able to increase his salary and give Mr. Kann a demand note for the $10,000 he had deposited as capital when application was made for the charter, and $24,500 in bonus notes. These notes, however, were not to be paid until the surplus was $100,000 in amount.

Viewing the method of operating the company from the standpoint of the Pennsylvania statute, with the possible exception of the contemplated withdrawal of the $10,000 paid in as capital, it cannot well be said that it was unwise. Its reserve, under Pennsylvania supervision, was not unduly large for safety, and its general business seems to have been conducted intelligently. But the inquiry of the court goes beyond such a finding. That inquiry is not whether the State statute has been followed, but whether the company is one contemplated by Section 101(11) of the Revenue Acts of 1936 and 1938, and operated as such.

The statute under which the complainant was organized, despite the fact that it purports to permit the organization of mutual casualty companies, is apt to leave the impression that it permits the incorporation of companies with certain of the functions of stock companies, but with attenuated capital. Of course the legal definition of "mutual" companies is to be read into it, and it is not to be inferred that we think no company chartered under it may not qualify under the federal exemption statute. In the instant case, however, the court feels that the company was not so operated as to demand exemption from tax. Those in charge of it desired to pile up a large reserve so that ultimately it might widen its territory and compete with other insurance companies. That idea was not bad in itself, but it is not the concept of the federal exemption statute. Carried out successfully, it would in the end lead to a company of good repute and quite safe—a desirable result to the company, but not to the interest of present policyholders entitled to insurance at cost and not necessarily interested in the future of the company to the exclusion of their immediate rights.

In addition to the fact that the company held income for a purpose other than the payment of losses and expenses, it engaged in operations other than contemplated by the Sections 101(11) of the Acts of 1936 and 1938. It borrowed money in addition to its income with which it purchased securities from which it made considerable profit. True, a Government bond was purchased with the borrowed money—a laudable thing in itself, but also a lucrative one. The laudable part of the transaction may be somewhat diminished by the subsequent sale of the bond, but the lucrative part remained. It is not the function of a mutual casualty company under the exemption statute, wise as the transaction may be, to borrow money and pay out gains therefrom to policyholders—who are entitled to proper returns from their premiums, but not to returns from moneys otherwise acquired by the company. See MacLaughlin v. Philadelphia Contributionship, 3 Cir., 73 F.2d 582.

The claim for refund was based upon no claim other than that of exemption, and the decision is based upon that claim alone.