KEYSTONE MUT. CASUALTY CO. v. DRISCOLL, Collector of Internal Revenue.

No. 8096.

Circuit Court of Appeals, Third Circuit.

Argued November 17, 1942.

Decided Aug. 13, 1943.

908

· David B. Buerger, of Pittsburgh, Pa. (Smith, Buchanan & Ingersoll, of Pittsburgh, Pa., on the brief), for appellant.

Paul R. Russell, of Washington, D.C. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and A. F. Prescott, Sp. Assts. to Atty. Gen., and Charles F. Uhl, U. S. Atty., of Pittsburgh, Pa., on the brief), for appellee.

Before BIGGS, JONES, and GOODRICH, Circuit Judges.

BIGGS, Circuit Judge.

The question presented by the appeal at bar is whether the taxpayer, Keystone Mutual Casualty Company, is entitled to the exemption from income taxes provided by Sections 101(11) of the Revenue Acts of 1936 and 1938, 49 Stat. 1648, 1674 and 52 Stat. 447, 481, 26 U.S.C.A. Int.Rev.Code, § 101(11).[1] The complaint arose under the Act of March 3, 1887, c. 359, §§ 1, 2, 24 Stat. 505, as ·amended, 28 U.S.C.A. § 41 (20).

On July 22, 1936, the appellant was chartered as a mutual casualty company under the laws of Pennsylvania. 1921, May 17, P.L. 682, Art. I, § 101 et seq. 40 P.S.Pa. § 361 et seq. All policy holders

---

[1] The Revenue Act of 1936 provides:

"§ 101. The· following organizations shall be exempt from taxation under this title— * * *

"(11) Farmers' or other mutual hail, cyclone, casualty, or fire insurance companies or associations (including interinsurers and reciprocal underwriters) the income of which is used or held for the purposes of paying losses or expenses."

Section 101(11) of the Revenue Act of 1938 is identical.

are members of the company, each member having one vote for each policy held by such member. All policy holders present at meetings in person or by proxy may vote on resolutions. The appellant has never had any stock or stockholders. The articles of incorporation provide that officers and directors must be selected from the membership; that is to say, from among the company's policy holders, and officers and directors have always been thus selected.

The premiums charged have been about 25% lower than those charged by the so-called "bureau" companies and somewhat lower than those charged by other mutual companies in the same territory. The appellant reduced its rates for insurance in 1937, reduced them twice in 1939, and reduced them again in 1940.

Income for the years 1936, 1937 and 1938 is involved. The court below, making additional findings of fact at the request of the appellant found that in the year 1936 the appellant operated at a net loss of about $2,850, at a net loss for the year 1937 of approximately $23,000, and at a net gain in the year 1938 of approximately $17,700.

During the years 1936, 1937 and 1938 insuring of automobiles constituted over ninety percent of the appellant's business. The appellant's founder was Nathaniel P. Kann who in July, 1936, was conducting an insurance agency. A large proportion of the signers of the petition for the appellant's charter were members of his office force. Kann deposited $10,000 as the capital required by the law of Pennsylvania, 1921, May 17, P.L. 682, Art. II, § 206, as amended 1937, July 1, P.L. 2528 § 1, 40 P.S.Pa. § 386, and he and all the other signers agreed that in case of necessity they would submit to an assessment equal to the amount of premiums paid. 1921, May 17, P.L. 682, Art. IV § 426, 40 P.S.Pa. § .611. By the beginning of 1938 the appellant had acquired a very substantial reserve, but the court below found as a fact that this reserve was not greater in amount than that approved by the Insurance Department of Pennsylvania. No returns of excess have been made by the appellant to its members. The excess, as was found by the court below, was added to reserve for the purpose of increasing the standard and credit of the company and to permit it in time to do business in nearby States which require larger reserves for a mutual company than does Pennsylvania.

At the end of its first two and a half years of existence the company increased Kann's salary and gave him a $10,000 demand note for his original capital deposit, plus $24,000 in so-called bonus notes. The payment of these notes, however, was conditioned on the appellant's surplus exceeding $100,000 plus the amount of the notes. The District Court found as a fact that the appellant had never paid premium rebates or any redundancy to its policyholders, and stated, "Since its organization the company has been dominated by Mr. N. P. Kann, who obtained sufficient proxies of policyholders to be in control of all meetings. At the annual meeting held April 27, 1939, one of those present recommended that the company's surplus be returned to the policyholders as a dividend. The recommendation was not adopted, being opposed by Mr. Kann, who was in control."

The Pennsylvania statute relating to the reserves of mutual insurance companies other than mutual life companies is 1921, May 17, P.L. 682, Art. VIII, § 807, 40 P.S. Pa. § 917, which provides: "A mutual insurance company * * * shall maintain unearned premium and other reserves separately, for each kind of insurance, upon the same basis as that required of domestic stock insurance companies transacting the same kind of insurance * * *. Any reserve for losses or claims based upon the premium income shall be computed upon the net premium income, after deducting any so-called dividend or premium returned or credited to the member. * * *" Obviously the Pennsylvania legislature contemplated that a mutual insurance company should return a portion of its earnings to its members if its earnings and reserves warranted such a course.

The District Court held that the appellant was not entitled to the exemption provided by the sections of the federal statutes referred to in this opinion and that such statutory provisions granting exemptions, were to be construed strictly. Referring to decisions construing the statutes under consideration or similar acts, the District Court stated, 44 F.Supp. 658: "The consensus of the opinions is that the section contemplates an association of individuals whose sole object is to obtain insurance for themselves at cost, and, if amounts greater than necessary cost had been collected, that excess was to be returned to members in some form. The

maintenance of a reasonable reserve is not prohibited, but it must be for the one purpose of paying losses and expenses, with uitimate return of excess to members. In other words, the association is for the benefit of the members, and not the members for the benefit of the association."

During the tax years now under consideration, the appellant borrowed $90,000 from its bank at 1½% interest and bought a $100,000 Government bond with an interest rate of 2¾%. The appellant admits that this particular transaction was beyond the usual scope of the activities of a mutual company but contends that this was de minimis and that for this reason alone it should not be denied its exemption as a mutual company. Other facts, however, throw further light on the appellant's attitude toward its members. It decreased its indebtedness to the lending bank by about $40,000 in a comparatively short time. During 1938 it sold securities which it held and realized profits in excess of $13,000. The court below, however, laid emphasis upon this transaction and stated, id. 44 F.Supp. at page 659, "It is not the function of a mutual casualty company under the exemption statute, wise as the transaction may be, to borrow money and pay out gains therefrom to policyholders—who are entitled to proper returns from their premiums, but not to returns from moneys otherwise acquired by the company.", citing MacLaughlin v. Philadelphia Contributionship, etc., 3 Cir., 73 F.2d 582, 584.[2]

The appellant cites the legislative history of the statutes and points out that the Revenue Act of 1926, 44 Stat. 40, § 231(11) 26 U.S.C.A. Int.Rev.Code § 101 (11), was the first statute to contain the exact language set out in Section 101(11) of the Revenue Act of 1938, 52 Stat. 481. Section 101(11) of the Revenue Act of 1936, 49 Stat. 1648, is identical in language with the corresponding section of the Revenue Act of 1938. The appellant points out that Section 231(10) of the Revenue Act of 1924, 43 Stat. 282, 26 U.S.C.A. Int.Rev. Acts, page 38, exempted " * * * mutual * * * casualty * * * insurance companies * * *; but only if 85 per centum or more of the income con-

sists of amounts collected from members for the sole purpose of meeting losses and expenses; * * *." It is correct, as the appellant points out, that the Revenue Act of 1926 removed the exemption of casualty insurance companies from the provisions of Section 231(10) and placed that exemption in Section 231(11), 44 Stat. 40, which contains no requirement that 85 per centum of the income be collected from members.

The Reports of the House Ways and Means Committee and the Senate Finance Committee (1939-1 (Part 2) Cumulative Bulletin 321, 349-350) state: "It so happens that in the case of insurance companies of a type covered by the new subdivision (11) of this Section the losses vary from year to year, and consequently in certain years the assessments collected are not used up in the payment of losses and expenses and no additional money is required to be collected for the payment of losses in the succeeding year." The appellant contends that the words quoted constituted recognition by Congress that money collected by way of premiums by an insurance company one year may be used by it to pay losses incurred upon policies written thereafter and the company still be entitled to exemption under the statutes. This legislative history does not indicate, however, that it was the intention of Congress that an insurance company claiming to be a mutual company may build up a large reserve as if it were an ordinary casualty company, meanwhile making no returns of premiums to members in accordance with the principle of redundancy, and remain exempt within the provisions of the statutes. That the appellant is not in fact operating as a purely mutual company, is made all the more apparent when the provisions of Section 1 of Article IX and Section 1 of Article X of the appellant's by-laws are considered.

■ Article X, Section 1, provides that in the event of the appellant's dissolution any surplus shall be distributed to those persons who are policyholders at that time. This provision would deprive those who had previously held policies in the company of the surplus properly attributable to

---

[2] In the MacLaughlin case this court stated, " * * * the facts in this case conclusively show that the plaintiff does not use or hold its income for the purpose of paying losses or expenses. The plaintiff earns large profits. It is not

the type of mutual company intended to be exempt from taxation." The court was construing provisions contained in Section 231(11) of the Revenue Act of 1926 similar to those involved in the case at bar.

them and confer an unearned increment upon subsequent policyholders. Article IX, Section 1, of the by-laws provides that the board of directors shall have absolute discretion to set aside a "permanent safety fund" and that the board of directors each year may set aside for such fund so much of the net surplus of the appellant as it might deem proper and reasonable. Article IX further provides, "Such fund shall belong to the Company, shall not be divided to or among the members thereof, nor shall any member ever be entitled to demand or receive any portion thereof while said Company continues to transact business except on payment of losses, nor shall any person after ceasing to be a member of the Company be entitled to have or receive any portion thereof." These provisions contemplate the establishment of a fund which shall belong to the insurance company as an entity and not to its members. Although this fund may actually be used for the purposes of paying losses or expenses in accordance with the Revenue Acts of 1936 and 1938, the company is not required to devote the fund to these purposes. Thus it cannot be said that the fund is "held" under the terms of the Revenue Acts for those purposes which are the only legitimate purposes of a. mutual company entitled to income tax exemption.

The intent of the company is further clarified by the testimony of Kann.[3] The company was attempting, he declared, to build up sufficient reserves to meet the requirements for doing business in other states and so expand its activities. Although such planning may have been prudent from a commercial viewpoint, it looked toward expansion of the company's business in other states rather than to the lowered cost of insurance for existing policy holders. The court below aptly made the following finding of fact: "Plaintiff has pursued a policy of retaining and accumulating its net earnings in order to strengthen its financial position and to enable it to expand its business."

Although this finding of fact may seem to be in conflict with the court's finding that the amount of income retained as reserve by the appellant was not unduly large in view of the Pennsylvania · legal requirements, the conflict is apparent rather than real. The reserves retained were not unduly large under Pennsylvania law. However, the intent of the appellant is crucial under the federal law and though the amount might well be legitimate the purpose for which it was retained violates the strict requirements of the exemption section for mutual companies of the Revenue Acts of 1936 and 1938.

This court stated in Driscoll v. Washington County Fire Ins. Co., 3 Cir., 110 F.2d 485, 490: "The essential of mutuality is membership. * * * Incident to membership is the right to redunancy and the burden of assessment. As was stated by the Supreme Court in Penn Mut. Life Ins. Co. v. Lederer, supra, 252 U.S. [523], 525, 40 S.Ct. 397, 64 L.Ed. 698, it is the essence of mutual insurance that the excess in the premium over the actual cost as ascertained shall be returned to the policyholders." See also MacLaughlin v. Philadelphia Contributionship, supra, 73 F.2d at page 584. We hold that the appellant is not such a mutual company as was contemplated by Congress as being entitled to avail itself of the exemption.

The judgment of the court below is affirmed.

---

[3] See the appellant's appendix pp. 12a and 13a.